**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| D'ANGELO FOSTER and AMANDA UNDERWOOD, on behalf of themselves and those similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 3:15-cv-647-WKW-GMB |
| CITY OF ALEXANDER CITY and WILLIE ROBINSON, in his official and individual capacities, | |
| Defendants. | |

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT CITY OF ALEXANDER CITY (DOC. 39) AND MOTION TO
<u>DISMISS OF DEFENDANT WILLIE ROBINSON (DOC. 41)</u>**

Plaintiffs filed this action on behalf of themselves and all individuals unlawfully arrested and imprisoned for nonpayment of fines or fees by Defendants the City of Alexander City ("Alexander City" or "the City") and Alexander City Police Chief Willie Robinson (collectively "Defendants").  In a practice that amounted to the creation of a modern-day debtors' prison, Defendants used Alexander City's police department to arrest and detain individuals because of fines and costs owed to the City's Municipal Court for traffic tickets or misdemeanors.

Defendants' motions to dismiss largely misstate and ignore the key allegations of Plaintiffs' First Amended Complaint.  The City argues that no Sixth Amendment violation is alleged because no jail sentence was imposed *by the Municipal Court* and that, in any event, the City cannot be held liable for the actions of the Municipal Court.  The City thus misunderstands the gravamen of Plaintiffs' Sixth Amendment claim, which is based on the City's policy and

practice, effectuated through the actions of the police department, of converting the Municipal Court's monetary sentence into one of incarceration when the person is unable to pay in full, without providing these individuals the benefit of counsel.

Defendant Chief Robinson also argues that the First Amended Complaint fails to establish a plausible causal connection between his actions and the illegal Alexander City policy of jailing persons for nonpayment. This argument attempts to read in a heightened level of pleading that is not required under Rule 8 of the Federal Rules of Civil Procedure, entirely ignores the relevant factual allegations within the First Amended Complaint, and cites to and relies on case law that is factually inapposite. Particularly given the broad practice of courts to infer supervisory acquiescence when an unambiguously illegal practice occurs without exception over an extended period of time, Plaintiffs have properly pled facts that implicate Defendant Robinson's liability. Defendant Robinson also argues that the claims against him in his official capacity should be dismissed because the City of Alexander City is also a defendant, but these issues of redundancy and possible jury confusion should be considered, if at all, at a subsequent time in the proceedings.

For these reasons, and as discussed in greater detail below, Defendants' motions to dismiss should be denied.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

Alexander City is a small town of around 15,000 residents, where almost 30% of the population lives below the poverty level. First Amended Complaint ("FAC") ¶ 12, Doc. 36. The Municipal Court, which is located in the same building as the City's police department and jail, convenes twice per month to hear cases involving city ordinance violations such as traffic tickets and misdemeanors. *Id.* ¶¶ 13-15.

Defendants Alexander City and Police Chief Robinson used the City's police department to arrest and detain individuals because of fines and costs owed to the City's Municipal Court. Individuals who received monetary sentences from the Municipal Court were not provided with counsel or instructed as to their right to counsel, and ability to pay was not assessed during their court proceedings. *Id.* ¶¶ 20-22.  Rather, these individuals were directed to a "back room" where money was collected. *Id.* ¶¶ 17-19, 23.  Those who were unable to pay their costs or fines in full were arrested and jailed by Alexander City police officers until their fines were satisfied by full payment or by sitting out the time in jail. *Id.* ¶¶ 24-25.  The police set the sit-out rate pursuant to a formula based on the individual's monetary sentence; individuals served one day for every $20 owed, or were credited $40 per day of incarceration if they performed work as "trustees" for the police department, such as cleaning the jail, the Police Department's break room, or officers' cars. *Id.* ¶ 28.  The City arrested and detained these individuals without providing them with access to counsel or obtaining a knowing, voluntary, and intelligent waiver of right to counsel, despite knowing that these defendants with monetary sentences were not provided with access to counsel in their Municipal Court hearings. *Id.* ¶¶ 20, 21, 32, 96.

These practices reflect a long and widespread history of abuse that has affected both named Plaintiffs and over two hundred low-income individuals over the past two years. *Id.* ¶ 4. This abuse occurred at the hands of the Alexander City Police Department, *id.* ¶¶ 25-29, and Defendant Robinson, as the Chief of the Alexander City Police Department, authorized and was aware of these practices, *id.* ¶¶ 29-33. The Alexander City Police Department created and maintained both arrest reports and jail logs that documented these arrests and jail sentences based on nonpayment. *Id.* ¶¶ 26-27.  When a person was arrested for nonpayment, the arrest report typically denoted that the individual was being "held from Court for $XXX Cash," or "for $XXX

fine," where "XXX" indicates the person's monetary sentence.  *Id.* ¶¶ 26-27, 40, 55.  The arrest reports are updated upon an individual's release by noting either that the imprisoned individual paid the outstanding amount owed, or sat out the number of days required.  *Id.* ¶ 26.  The jail log typically notes that the reason for incarceration is "Court XXX," where "XXX" represents the amount owed, or "Court Disposition."  *Id.* ¶ 27.

The First Amended Complaint asserts against both Defendants three claims: two pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth and Fourth Amendments, as well as a state law claim for the tort of false imprisonment.  It additionally asserts a claim against the City pursuant to § 1983 for violations of the Sixth Amendment.  Each claim arises out of the policy and practice of the Defendants to arrest and incarcerate low-income individuals unable to pay fines and costs in full.  *Id.* ¶¶ 29, 32, 78, 85, 93, 100.

On December 15, 2015, Defendant Alexander City moved to dismiss only one of the four claims asserted against it—Plaintiffs' Sixth Amendment right to counsel claim.  Doc. 39. Defendant Robinson moved to dismiss all claims pending against him.  Doc. 41.

## **ARGUMENT**

I.    **The First Amended Complaint Properly States a Claim for the City's Violations of Plaintiffs' Sixth Amendment Right to Counsel.**

The Amended Complaint sets forth in detail the policy, custom, and practice of Alexander City that results in the routine imprisonment of individuals unrepresented by counsel. The practice begins with the City's citation of individuals for misdemeanors or traffic violations. These individuals are then brought by the City before a Municipal Court for adjudication of the underlying offense.  Following an adjudication of guilt or a guilty plea, the Municipal Court imposes fines and court costs, which the City attempts to collect.  When these individuals are unable to pay the assessed fines and costs, they are incarcerated by members of the City's Police

Department, despite the City's knowledge that those individuals were not represented by counsel when they were convicted and sentenced. These individuals remain in jail until their fines and costs have been paid off at a rate of $20 or $40 dollars for each day of incarceration.

In moving to dismiss, the City ignores these allegations and attempts to narrow Plaintiffs' Sixth Amendment claims to the single moment when they appeared in Municipal Court. In doing so, the City frames its motion around the erroneous contention that Plaintiffs are attempting to hold the City liable for the conduct of the Municipal Court. But Plaintiffs' Sixth Amendment claims arise not from the monetary sentence imposed by the Municipal Court, but from the policy, practice, and custom of the City of converting that monetary sentence into one of jail time, without the benefit of counsel, in clear violation of the Sixth Amendment. FAC ¶¶ 25-27, 96. The City is liable for the violations of the Sixth Amendment caused by this policy, custom, and practice because, by the procedures it implemented, the City itself caused the deprivation of Plaintiffs' right to counsel. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). A "municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Id.*; *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (city liable under § 1983 when plaintiff's "injury was the result of the city's unlawful 'policy or custom'").

### A. The City's Deprivation of Plaintiffs' Liberty is the "Actual Imprisonment" Relevant to Their Sixth Amendment Claim.

1. *Plaintiffs' Actual Imprisonment by the City Triggered Their Right to Counsel.*

It is well established that the Sixth Amendment right to counsel is triggered by actual imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty,

misdemeanor, or felony, unless he was represented by counsel at his trial."); *Alabama v. Shelton*, 535 U.S. 654, 662 (2002) ("Subsequent decisions have reiterated the *Argersinger-Scott* 'actual imprisonment' standard."). The City does not dispute this basic proposition, but argues that Plaintiffs fail to state a claim because they do not allege that the *Municipal Court* sentenced them to imprisonment. Brief in Support of Motion to Dismiss by Alexander City ("City Br.") at 6, Doc. 40. This argument is misplaced, however, because Plaintiffs' claims are based on their imprisonment by the City, not on sentences imposed by the Municipal Court.

The actual imprisonment standard is not limited to the time of sentencing by the court. In *Alabama v. Shelton*, the Court held that the Sixth Amendment prohibits activation of a suspended sentence for an uncounseled defendant even when the jailing was not activated at the time of sentencing: "The uncounseled conviction at that point 'result[s] in imprisonment' . . . [and] 'end[s] up in the actual deprivation of a person's liberty.'" *Shelton*, 535 U.S. at 662 (citation omitted). This deprivation is "precisely what the Sixth Amendment . . . does not allow." *Id.* With this holding, the Supreme Court "refused to distinguish between a prison sentence that the defendant begins to serve immediately and one that is suspended, coupled with probation, and triggered only upon a probation violation." *United States v. Pollard*, 389 F.3d 101, 103 (4th Cir. 2004). As the State of Alabama conceded in *Shelton*, "the Sixth Amendment bars *activation* of a prison sentence for an uncounseled conviction," *Shelton*, 535 U.S. at 661, and numerous courts have made the same observation, s*ee, e.g.*, *Pollard*, 389 F.3d at 105 ("We also acknowledge . . . that the actual imposition of a prison term upon revocation of probation may pose Sixth Amendment problems if the defendant was uncounseled for the underlying conviction that led to probation."); *United States v. Perez-Macias*, 335 F.3d 421, 428 (5th Cir. 2003) ("The actual

imposition of a term of imprisonment upon probation revocation may pose a Sixth Amendment problem.").

Here, too, the City acknowledges the actual imprisonment standard, but ignores Plaintiffs' allegations related to their imprisonment by City policy, practice, or custom. Instead, the City contends that Plaintiffs have failed to allege conduct "by the municipal judge" that violated Plaintiffs' Sixth Amendment rights. City Br. at 7. The City misunderstands Plaintiffs' Sixth Amendment claims in two crucial ways. First, the City cuts off the relevant timeline at the end of Plaintiffs' Municipal Court hearing, which allows the City to ignore the conduct of its own agents in creating and maintaining a system that regularly imprisoned unrepresented individuals following their Municipal Court hearings. Second, the City mischaracterizes the First Amended Complaint as a complaint about the conduct of the Municipal Judge. Plaintiffs do not allege that the Municipal Court violated their Sixth Amendment rights. Instead, Plaintiffs claim that the *City* violated their Sixth Amendment rights by creating, implementing, and maintaining a policy to incarcerate defendants who cannot pay the fines and costs imposed during court proceedings where they were not represented by counsel. Under that policy, the term of imprisonment is automatically calculated based on the amount of fines and fees assessed in court, without affording Plaintiffs access to counsel before their imprisonments. This is precisely the conduct forbidden by *Shelton.*

>    2.    *The City Implemented an Unconstitutional Policy or Practice of*
>           *Incarcerating Unrepresented Defendants.*

The Sixth Amendment right to counsel "includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right." *United States v. Hicks*, 798 F.2d 446, 448 (11th Cir. 1986) (quoting *Maine v. Moulton*, 474 U.S. 159, 176 (1985)). In *Shelton*, the Court made clear that this affirmative obligation extends to any

cases that that result in incarceration, even if the jail sentence is not activated at sentencing. The Court further made clear that any summary proceeding that activates incarceration cannot substitute for the requirement that counsel be present when guilt was adjudicated. *Shelton*, 535 U.S. at 667 ("We think it plain that a [probation revocation] hearing so timed and structured cannot compensate for the absence of trial counsel . . . . Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent probation revocation hearing, a defendant in Shelton's circumstances faces incarceration on a conviction that has never been subjected to 'the crucible of meaningful adversarial testing.'" (citation omitted)).

In Alexander City, Plaintiffs were adjudicated for the underlying offense and given a monetary penalty, during a hearing in which they were unrepresented. Their imprisonment was then activated by the unilateral conduct of City officials and the Alexander City Police Department, who converted that monetary penalty to a jail sentence when Plaintiffs could not pay, FAC ¶¶ 24-25, and who knew that Plaintiffs had not had the benefit of counsel, *id.* ¶¶ 20-21, 32. As in *Shelton*, Plaintiffs' incarceration for nonpayment violated the Sixth Amendment because their incarceration resulted from an underlying conviction for which they were not represented. Like a suspended sentence, the incarceration imposed for nonpayment by Alexander City was determined based on the sentence for the underlying misdemeanor or traffic violation, with the length of imprisonment calculated directly from the fines and fees imposed by the judge. FAC ¶¶ 26, 28.

### B. The City is Liable for Implementing these Policies and Practices.

It is well-established that the City is liable for policies, practices, and customs that deprive individuals of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690-91 (1978) ("[L]ocal governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Anderson v. Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) (finding "sufficient evidence" that deprivation of constitutional rights at city detention center "may be fairly said to represent official policy of the City of Atlanta"); *Kerr v. West Palm Beach*, 875 F.2d 1546, 1556 (11th Cir. 1989) (holding that a reasonable jury could conclude that "the unconstitutional character of many of the canine unit's apprehensions was plainly obvious to City officials, who then deliberately chose not to take corrective action."). The First Amended Complaint alleges that the City, not the Municipal Court, established the policies or practices that resulted in the imprisonment of individuals based on fines and fees assessed against them in uncounseled proceedings. The City is therefore incorrect that Plaintiffs' Sixth Amendment claims are based on a theory of *respondeat superior* with the Municipal Court judge as the official policymaker, City Br. at 9-10; Plaintiffs' claims are premised on the constitutional failures of the City and its agents. The City cannot disclaim responsibility for procedures that systematically incarcerated unrepresented individuals when the unlawful incarceration was activated and implemented by the City and its agents outside of a court proceeding.

The City can and should be held liable for its own policies and procedures that violated Plaintiffs' Sixth Amendment rights. *See Tucker v. City of Montgomery Bd. of Comm'rs*, 410 F. Supp. 494, 507-08 (M.D. Ala. 1976) (finding City of Montgomery, through state law and the actions of the mayor, liable for failure to furnish "prompt and effective counsel" to those entitled to it); *see also Wilbur v. City of Mount Vernon*, 2013 WL 6275319, *7-8 (W. D. Wash. Dec. 4, 2013) ("[T]he combination of contracting, funding, legislating, and monitoring decisions made

by the policymaking authorities for the Cities directly caused the truncated case handling procedures that have deprived indigent criminal defendants" of their constitutional rights (citing *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003)); *Clay v. Friedman*, 541 F. Supp. 500, 502, 505–06 (N.D. Ill. 1982)) (plaintiff adequately pleaded custom or policy of the county related to "incompetent representation by . . . Public Defenders"). The City is not shielded from municipal liability for their extrajudicial imprisonment in violation of the Sixth Amendment simply because their actions impacted cases that began in Municipal Court. *See DePiero v. City of Macedonia*, 180 F.3d 770, 786–87 (6th Cir. 1999) (holding municipality liable for "policy decisions addressing the administration of the municipality" that implicated the "functioning of the Mayor's Court"); *see also Anderson*, 778 F.2d at 686-87 (city liable for deprivations of constitutional rights outside of the courtroom); *Kerr*, 875 F.2d at 1556 (same).

The City's focus on *Pompey v. Broward County*, 95 F.3d 1543 (11th Cir. 1996) and *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216 (N.D. Ala. 2012), is therefore misplaced. *See* City Br. at 17-19. Both cases centered entirely on allegations of constitutional violations by the state court, not conduct by government officials following court proceedings. In *Pompey*, the plaintiffs contended that "their [civil] contempt hearings violated the Sixth and Fourteenth Amendments" because plaintiffs were not "advised of their right to court-appointed counsel" or "provided with court-appointed counsel . . . *during the 'cursory' contempt hearings*" in which they were sentenced to jail. 95 F.3d at 1544-45 (emphasis added). The plaintiff's allegations in *Woodard* focused on the allegedly wrongful issuance of a single arrest warrant and made no allegations of a policy or custom by the municipality. 885 F. Supp. 2d at 1232 ("Plaintiffs do not allege any facts showing that a 'custom' or an adopted 'policy' of the Town of Oakman was the 'moving force' behind any retaliation for their First Amendment rights."). To rely on these

cases, the City again focuses exclusively on Plaintiffs' municipal court hearings and ignores the full course of conduct alleged in the complaint: the unlawful imprisonment of unrepresented individuals outside of court proceedings for a term of imprisonment calculated from the fines and costs imposed for the underlying offense.

Similarly, the City's arguments about its authority over its Municipal Court are a red herring; Plaintiffs' Sixth Amendment claims arise from the conduct of City officials who knowingly incarcerated individuals following their Municipal Court hearings.  The City knowingly converted fine-only sentences to jail time, fully aware that counsel had not been provided during any critical stage of the proceeding.  Even assuming, arguendo, that the City's responsibilities in the courtroom are relevant, the City understates the significant role it plays in providing counsel under Alabama law.

Though the City details the power of the Alabama Supreme Court over municipal judges, City Br. at 13-14, it fails to consider its own powers and duties to establish and maintain policies that comply with the Sixth Amendment.  The City is obligated to provide counsel to indigent defendants appearing in its courts.  Ala. Code § 12-14-9 ("A municipality which retains its court shall provide indigent defense services as otherwise provided by law."); *see also* City of Alexander City Code of Ordinances ("Code of Ordinances") § 30-27.[1]  The City may also adopt ordinances or other policies that would apply to its municipal court; those laws and policies must adhere to all applicable laws, including the Constitution.  Ala. Code § 11-45-1 (Municipalities may "adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by . . . any other applicable provisions of law

---

[1] *Available at* https://www.municode.com/library/al/alexander_city/codes/code_of_ordinances?nodeId=CD_ORD_CH30CO_ARTIIMUCO (last visited Jan. 5, 2016).

and to provide for the safety" and "order . . . of the inhabitants of the municipality."); *id.* § 12-14-7 (municipal court required to take judicial notice of all city ordinances); Code of Ordinances § 30-30 (same); *see also Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc.*, 895 So. 2d 225, 233 (Ala. 2004) ("[I]t has long been recognized that the Legislature, operating within its separate sphere of constitutional authority, also has the power to establish rules governing practice and procedure in the courts in this State . . . [and may] 'establish rules of procedure by which courts shall . . . conduct the trial of cases.'" (citation omitted)). The City, in fact, has had ordinances in place that mandate rules and procedure for its Municipal Court since at least 1980. *See* Code of Ordinances §§ 30-21 *et seq.*

### C. The *Rooker-Feldman* Doctrine does not Bar Plaintiffs' Sixth Amendment Claims because Plaintiffs do not Seek Review of Municipal Court Judgments.

The *Rooker-Feldman* doctrine does not bar Plaintiffs' Sixth Amendment claims because Plaintiffs do not seek review of their municipal court judgments. The Supreme Court explained in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), that the *Rooker-Feldman* doctrine, which limits the authority of the District Court to review final judgments of state courts, restricts a court's subject matter jurisdiction only in narrow circumstances where a lawsuit is "'[(1)] brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced and [(4)] inviting district court review and rejection of those judgments.'" *Sophocleus v. Ala. Dep't of Transp.*, 605 F. Supp. 2d 1209, 1215 (M.D. Ala. 2009) (alteration in original) (quoting *Exxon*, 544 U.S. at 284), *aff'd*, 371 F. App'x 996 (11th Cir. 2010). Plaintiffs' claims in this action do not seek "review and rejection of the [municipal court] judgments," *Sophocleus*, 605 F. Supp. 2d at 1215 (quotation and citation omitted), since the issue of incarceration, and the resulting violation of the right to counsel, was never presented to or adjudicated by the Municipal Court and only came

about because of the City's actions to convert the monetary sentence to a jail sentence *after* the relevant Municipal Court hearing.  A ruling in Plaintiffs' favor does not require any consideration, much less rejection, of the Municipal Court's monetary sentences.

The City nevertheless asserts that success on Plaintiffs' Sixth Amendment claims requires this Court to find that "'the state wrongly decided the issues'" simply because the municipal judge did not provide them with access to counsel in their municipal court proceedings.  City Br. at 23 (citing *Springer v. Perryman*, 401 Fed. Appx. 457, 458 (11th Cir. Oct. 27, 2010)).  But, as this Court has noted, the Supreme Court rejected this argument in *Exxon*.  *See Sophocleus*, 605 F. Supp. 2d at 1215-16.  There, the Supreme Court concluded that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction.'"  *Exxon*, 544 U.S. at 293 (quoting *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).  Similarly, in *Feldman*, the Supreme Court "concluded that the *Rooker-Feldman* doctrine did not prohibit federal-court jurisdiction for a constitutional challenge to a bar rule, even though the court's judgment that the rule was correctly applied to the plaintiffs would be severely undermined if the rule itself were found to be unconstitutional."  *Sophocleus*, 605 F. Supp. 2d at 1216 (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483-87 (1983)).  "The distinction is subtle, but it means that a federal court may hear claims about a state-court 'legal conclusion'—even if the state courts have previously rejected that claim or if it would undermine the state-court judgment—in contrast to its utter prohibition from hearing claims that would vacate a state-court judgment."  *Id.* at 1215-16.

Thus, any decision by this Court that Plaintiffs were wrongly jailed under the Sixth Amendment because they were denied counsel does not bar jurisdiction here.  Rather, this Court

must assume jurisdiction because Plaintiffs are not challenging the judgment entered against them in municipal court, but rather are asserting the "independent claim" that the City's policies led to their jailing without the assistance of counsel. *Exxon*, 544 U.S. at 293. *See also Fant v. City of Ferguson*, --- F. Supp. 3d ----, No. 4:15-CV-00253-AGF, 2015 WL 3417420, at *9 (E.D. Mo. May 26, 2015) ("Because Plaintiffs do not complain of injuries caused by the state court judgment, but rather by the post-judgment procedures employed to incarcerate persons who are unable to pay fines, *Rooker–Feldman* is also inapplicable." (citing *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007); *Ray v. Judicial Corr. Servs.*, No. 2:12-CV-02819-RDP, 2013 WL 5428360, at *9 (N.D. Ala. Sept. 26, 2013)).

## II. The First Amended Complaint Properly Pleads Specific Facts to Establish that Chief Robinson is Legally Responsible for the City's Policy and Practice of Detaining Persons that Were Unable to Pay Their Fines and Fees.

When considering a motion to dismiss under Rule 12(b)(6), the Court must credit "as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citation omitted). The complaint's facts must establish a "plausible" claim for relief, but there exists no "heightened pleading standard" nor a requirement for "detailed factual allegations"; fair notice is sufficient. *Id.* at 705, 710 (discussing Fed. R. Civ. P. 8, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and related cases).

A "plausible" claim of supervisory liability under 42 U.S.C. § 1983 is established by pleading that "a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). This causal connection can be established through "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [his failure] to do so," by showing that a

custom or policy existed that "result[ed] in deliberate indifference to constitutional rights", or by "facts that support an inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1048 (citation omitted).  Moreover, a supervisor such as Chief Robinson may be liable for failure to train where he has actual or constructive notice of the deficiency of the training of subordinates through "a pattern of similar constitutional violations." *Id.* at 1053.

Contrary to Defendants' assertion that the complaint's allegations are "conclusory and boilerplate," the First Amended Complaint sets forth specific facts that establish a plausible causal connection between Chief Robinson and Alexander City's illegal policy of jailing persons who cannot pay.  Taking the facts alleged as true, Alexander City is a small town of around 15,000 residents.  FAC ¶ 12.  Every person who is sentenced to a non-custodial monetary penalty in municipal court is directed to a back room, where each person is told to either immediately pay or is arrested by the police and taken to jail.  *Id.* ¶¶ 23-24.  In every instance, the police utilize a formula to convert the monetary sentences into days of jail time, requiring defendants to "sit out" their debts in jail or to gain their freedom by getting someone else to pay off their monetary sentence.  *Id.* ¶ 25.  The police set the sit-out rate consistently for everyone; persons are credited $20 per day in jail, or $40 if they work as "trustees."  *Id.* ¶ 28.  These "trustees" do various tasks for the police department, including cleaning the jail, the police officers' break room, and police officers' cars.  *Id.* ¶ 42.  Every time a person is jailed for nonpayment, the police department records this in its jail log, and it prepares an arrest report which denotes that the person is being arrested because they are "being held from Court for $XXX Cash," or "for $XXX fine," where "XXX" indicates the person's monetary sentence.  *Id.* ¶¶ 26–27, 40, 55.  The arrest reports are later updated upon their release by noting either that they paid the outstanding

amount owed, or they sat out the number of days required. *Id.* ¶ 26. Though this policy started before Chief Robinson assumed his position in 2013, over the last two years under his tenure this unlawful process has continued, and has victimized Plaintiff Mr. Foster, Plaintiff Ms. Underwood, and more than 200 other such individuals. *Id.* ¶¶ 34-49 (Foster); 50-68 (Underwood); 4 (200 in two years).

Taking these factual allegations as true and drawing all reasonable inferences in Plaintiffs' favor, "common sense" leads to the conclusion that there is a causal connection between Chief Robinson and this illegal policy. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010); *Keith*, 749 F.3d at 1048. Especially where, as here, there are specific factual allegations about the policy, the policy has been applied identically to named Plaintiffs Underwood and Foster on separate occasions, and jail log and police report documentation establishes that the same policy has injured 200 others over the past two years, the lenient requirements of Rule 8 are satisfied. *See Harper v. Lawrence Cty*, 592 F.3d 1227, 1236-37 (11th Cir. 2010) (supervisory liability adequately alleged because two incidents involving denial of treatment for alcohol withdrawal were "strikingly similar" and plaintiff had made "specific allegations regarding the customs or policies put in in place by the supervisors"); *see also Williams v. Santana*, 340 F. App'x 614, 618 (11th Cir. 2009) (alleged history of eight prior incidents of suspected use of violence over four-year span established history of widespread abuse sufficient for supervisory liability).

Defendant Robinson fails to acknowledge the preceding factual allegations in his motion to dismiss. He objects that Plaintiffs have not pled with specificity "*how*," "*when*," or "*on what basis*" Chief Robinson adopted this policy, *see* Brief in Support of Motion to Dismiss by Robinson ("Robinson Br.") at 4, Doc. 42 (emphasis in original), but such specificity is not

required at this stage of the proceedings.   *Contrast* Fed. R. Civ. P. 9(b) (pleading with particularity fraud or mistake) *with* Fed. R. Civ. P. 8 (notice pleading); *Randall*, 610 F.3d at 710 (no "heightened pleading standard" under Rule 8 post-*Iqbal*).   Defendant Robinson cites to *Iqbal*, but the flaw in *Iqbal* was that the complaint, once stripped of its conclusory allegations, failed to factually articulate that the Attorney General and FBI director acted with discriminatory intent, where intent was a required element to establish a claim of invidious discrimination.   556 U.S. at 681-82.   Defendant Robinson also cites to *Gonzales v. Reno*, 325 F.3d 1228 (11th Cir. 2003), but that case involved allegations devoid of factual support that the Attorney General, Deputy Attorney General, and head of the former Immigration and Naturalization Service personally directed a "paramilitary raid" against a single residence and pre-approved specific Fourth Amendment violations that transpired during the arrest.   *Id*. at 1235.[2]   And Defendant Robinson   cites *Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013), involving a jailer's sexual assault, where the court reasoned that there was no plausible factual basis given to assume that supervisors had any knowledge of the alleged conduct, emphasizing the lack of any descriptions of the (allegedly defective) policies of the jail.   *Id.* at 1251.

By contrast, Plaintiffs here have set forth detailed facts establishing a widespread, consistent, and repeated illegal practice that happened after every court day in the same three-story building where Chief Robinson worked while overseeing the presumably modest-sized police force of the 15,000 resident town.   Moreover, the City's Code of Ordinances makes it the duty of the chief of police to oversee jailing and to collect fines, forfeitures, and penalties

---

[2] *Gonzales* references and employs the "heightened pleading requirement," 325 F.3d at 1235, that was overruled in *Iqbal*.   *See Randall*, 610 F.3d at 710.

imposed by the municipal judge.  Code of Ordinances § 2-45.[3]  Thus, unlike in *Iqbal*, *Gonzales*, and *Franklin*, the policy and practices applied to Plaintiffs and others in Alexander City are unquestionably illegal (unlike the absence of facts to infer intentional discrimination in *Iqbal*); the abuse is unquestionably widespread and mandatory (unlike *Gonzales* and *Franklin* where there was no evidence of a pervasive problem that would have put supervisors on notice); and it is reasonable to infer, at this early stage, Chief Robinson's subjective awareness that the violations were occurring and would continue because of the detailed record-keeping and the small size of the department, as well as his legal duty to oversee the jail and to collect money owed to the Municipal Court (unlike *Iqbal*, *Gonzales*, and *Franklin*, where there were no facts to support or infer supervisor knowledge).  Significantly, in *DeKalb*, the Eleventh Circuit specified that subjective awareness can be based on actual or constructive notice of a flagrant, persistent pattern of violations.  *DeKalb*, 749 F.3d at 1049 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007)).  Given the facts here—that Chief Robinson's department jailed over 200 individuals in a small town over two years for failure to pay, that it kept records of these abuses in the form of arrest reports and jail logs, and that the practice occurred in the same building where Chief Robinson's station is located—it is reasonable to infer that Chief Robinson had either actual or constructive notice of his department's violations.

Defendant Robinson also cites to *Holland v. City of Auburn*, No. 3:15CV333-WHA, 2015 WL 7862990 (M.D. Ala. Dec. 3, 2015), *appeal docketed*, No. 15-15654 (11th Cir. Dec. 22, 2015), where the district court found that a claim of supervisory liability against a chief of police for inadequate screening, training, and supervision failed because there was *no* factual basis

---

[3] *Available at* https://www.municode.com/library/al/alexander_city/codes/
code_of_ordinances?nodeId=CD_ORD_CH2AD_ARTIIIOFEMGE_S2-45PODUCHPO (last
visited Jan. 5, 2016).

given for the allegation of inadequate screening, training, and supervision. *Id.* at *7-8. As discussed above, the instant case provides a specific factual basis for the Court to draw the reasonable inference that Chief Robinson's actions are causally connected to the violations alleged.

Plaintiffs therefore respectfully submit that they have properly pled factual allegations that would establish, in the alternative, either that (1) Defendant Robinson was on notice of these consistent violations by virtue of their widespread and long history of abuse; (2) that he knew or should have known his subordinates would act unlawfully, given their long and consistent history of doing so, and did not prevent this from happening; or (3) that an inference can be drawn that he directed his subordinates to act in these illegal ways. *Keith*, 749 F.3d at 1048.[4]

## III. The Presence of Defendant City of Alexander City in this Action does not Warrant Dismissing the Claims Brought Against Defendant Chief Robinson in his Official Capacity at this Time.

The dismissal of the claims against Defendant Robinson in his official capacity is unwarranted at this stage of the litigation. Though an official capacity claim is indeed a suit "in actuality against the governmental entity that the individuals represent," it does not follow that official capacity claims must be dismissed for redundancy. *Farred v. Hicks*, 915 F.2d 1530, 1532-33 (11th Cir. 1990) (finding that complaint stated a claim against officers and head of police department in their official capacities). Defendant Robinson cites no authority to the contrary. The single case cited in support of his redundancy argument, *Busby v. City of Orlando*,

---

[4] Defendant Robinson subsequently sought to amend his motion to dismiss to clarify that he is seeking qualified immunity, *see* Doc. 45, but the only legal argument he raises is whether the "complaint . . . adequately allege[s] a plausible supervisory liability claim against Chief Robinson, showing through articulable facts." *Id.* at 2 ¶ 2. He is not presently challenging that the law underlying the Fourth and Fourteenth Amendment claims was not clearly established, nor that the conduct as alleged was constitutional. Qualified immunity also is not applicable to the state law false imprisonment claim. *See Heggs v. Grant*, 73 F.3d 317, 320 n.5 (11th Cir. 1996) (citing *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995)).

931 F.2d 764 (11th Cir. 1991), involved an appeal from a directed verdict and implicated concerns of jury confusion, *id*. at 776. *See* Robinson Br. at 5-6. Instead of directing courts to dismiss official capacity claims under Rule 12, the Eleventh Circuit has advised that courts can treat the government entity and official capacity defendants "collectively," especially where, as here, the Defendants are jointly represented. *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005). Courts are certainly "not required" to dismiss official capacity claims at this stage of the litigation, *Buckler v. Israel*, No. 13-62074-CIV, 2014 WL 2957244, at *2 (S.D. Fla. July 1, 2014), and no Eleventh Circuit authority "supports [Defendant's apparent contention that official-capacity suits against individual government officials are *per se* barred for failure to state a claim." *Patterson v. Walden*, No. CIV.A. 13-0109-WS-B, 2013 WL 3153761, at *3 (S.D. Ala. June 18, 2013); *see also Barteet v. Eismann*, No. 13-80434-CIV, 2014 WL 1207363, at *4 (S.D. Fla. Mar. 24, 2014). Dismissal of the official capacity claims for redundancy is particularly unnecessary when additional claims have been asserted against the same defendant in his individual capacity. A request of this nature would be better considered as a motion for summary judgment or for judgment as a matter of law if Defendants can later establish that the official capacity claims would cause confusion to the jury.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss the claims against them.

Dated: January 5, 2016     Respectfully submitted,

/s/ Sara Zampierin
Samuel Brooke (ASB-1172-L60B)
Sara Zampierin (ASB-1695-S34H)
Valentina Restrepo (ASB-7422-I67Z)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:  (334) 956-8200
Fax:  (334) 956-8481
samuel.brooke@splcenter.org
sara.zampierin@splcenter.org
valentina.restrepo@splcenter.org

William F. Cavanaugh, Jr.
Susan Millenky
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10024
wfcavanaugh@pbwt.com
smillenky@pbwt.com
[*Admitted pro hac vice*]

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the foregoing with the Clerk of Court using the ECF System, which will send notification of such filing to the following counsel of record who are registered for electronic filing:

David J. Canupp
Brad A. Chynoweth
LANIER FORD SHAVER & PAYNE, P.C.
P.O. Box 2087
2101 West Clinton Avenue, Suite 102 (35805)
Huntsville, AL  35804

William Larkin Radney, III
BARNES & RADNEY, P.C.
P.O. Drawer 877
Alexander City, AL  35011-0877

on this January 5, 2016.

/s/ Sara Zampierin
Sara Zampierin