UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| D'ANGELO FOSTER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:15-cv-647 (RCL) |
| CITY OF ALEXANDER CITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

### ORDER

Before the Court are three discovery disputes. The first is plaintiffs' motion[1] [81] objecting to a Magistrate Judge's orders granting protective orders [78, 79]. Ultimately at issue is the question of whether two individuals with roles in the municipal court system may be deposed as part of this litigation. For the reasons stated herein, the plaintiffs' motion [81] will be GRANTED IN PART and DENIED IN PART. The Court thus reverses in part the protective orders granted in ECF Nos. 78 and 79 in this case and the depositions of the individuals in question may proceed in accordance with this order. The emergency motions to stay [71, 73] are still denied as MOOT in light of this order. The second dispute regards interrogatories defendants propose be propounded to absent class members [60, 61]. For the reasons stated herein, defendants' motion [60] will be DENIED.[2] The final dispute regards the deposition of Chief Robinson. There are no briefs on this issue, but it was discussed by the parties at the motions hearing held on August 18th, 2016. Finally, The Court has determined that the deposition of Chief Robinson may proceed.

---

[1] The Court construes ECF 81 as a motion though it is filed as an objection.
[2] These are labeled as Brief/Memorandums on ECF. The Court has construed ECF 60 as a motion requesting the Court resolve the discovery dispute in defendants' favor.

1

I.     The Depositions of Haynes and Pritchard

The motions before the Court concern Municipal Judge Randall Haynes and Municipal Clerk Louise Pritchard.  This case regards the City of Alexander City's longstanding practice of running a debtors' prison.  The City would incarcerate individuals who did not have the means to pay fines and those individuals would "sit out" their debt at a rate of $20 per day or, if they did miscellaneous jobs for police officers, $40 per day.  During the course of discovery, another individual identified Haynes and Pritchard as the individuals who created this City policy.  Easterwood Tr. 27, ECF No. 75-3 ("It came from . . . the Courts. . . . [Pritchard] and Judge Haynes both started it theirselves under Chief Lynn Royal.").  Plaintiffs now wish to discuss the origins of the policy with the individuals identified as having created it.

Defendants argue that the doctrine of judicial immunity precludes their having to participate.  More specifically, they argue that the doctrine protects not only against damages, but also the burdens of non-party discovery.  *See* Judge Haynes Resp. 1, ECF No. 85.  Defendants argue that absolute immunity applies in this case to both Haynes and Pritchard, *id.* at 4-6, as the acts in question were within normal judicial functions, *id.* at 5, 13.

Plaintiffs argue that the doctrine of judicial immunity does not extend to non-party deponents, and even if it does that plaintiff is not seeking information that is judicial in nature.  Specifically, plaintiffs maintain they wish to depose the individuals on the following issues:

- The origins of the policy, practice, or custom;
- Letters authored by Judge Haynes addressing the City's policies;
- Other communications between the municipal court and the City regarding the police department's role in effectuating the arrests and jailings at issue in this case; and,
- The authority, or lack thereof, of Ms. Pritchard to make decisions in individual cases.

The Magistrate found that judicial immunity covers both deponents, applies to third-party deponents, and applies in this case due to the nature of the actions in question. In reviewing the Magistrate's orders, this Court is instructed to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

In support of their substantive positions, the parties cite a number of cases. Notable among them is *Mireles v. Waco*, 502 U.S. 9 (1991). *Mireles* explains that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. However, it also makes clear that immunity is overcome in two sets of circumstances, for non-judicial actions and for judicial actions taken in the complete absence of jurisdiction. *Id.* at 11-12. In determining if an act is judicial "we look to the particular act's relation to a general function normally performed by a judge." *Id.* at 13 (discussing *Stump v. Sparkman*, 435 U.S. 349 (1978)).

In determining if actions are judicial, we look to see if (1) the act constituted a normal judicial function, (2) if the events occurred in chambers or open court, (3) if the action involved a case before the judge, and (4) if it arose out of a visit to the judge in his judicial capacity. *See Scott v. Hayes*, 719 F.2d 1562 (11th Cir. 1983). Plaintiffs have articulated that they are not interested in information regarding (2), events occurring in Court, or (3), regarding individual cases. *See* Pls.' Objs. 21, ECF No. 81. Accordingly, the Court focuses on categories (1) and (4) below.

Plaintiffs' complaint addresses a number of issues, including actions that occur in or related to the Courtroom, such as the fact that indigent defendants are not appointed counsel. The Magistrate Judge found these to be judicial in nature and thus determined that Haynes and Pritchard did not need to submit to depositions under the doctrine of judicial immunity. The Court agrees with the Magistrate to the extent that plaintiffs are interested in determining how these deponents makes decisions regarding sentences, waivers, or any other issue related to normal

judicial functions. The Court departs with the Magistrate with respect to the categories of information plaintiffs have articulated. This departure is to be understood in light of the reasoning provided below. That is, to the extent plaintiffs wish to depose Haynes and Pritchard about non-judicial actions, the doctrine of judicial immunity does not protect either Haynes or Pritchard. Moreover, at least some of the information plaintiffs claim to seek is non-judicial. However, this order does not reverse the magistrate's order with respect to discovery regarding judicial actions.

With respect to the plaintiffs' first category of information, the origins of the policy, the distinction between interpreting or applying law or policy to cases and making that law or policy is an important one. Indeed, it is the very distinction between judicial and legislative functions. Thus to the extent Haynes or Pritchard were creating City policy their actions were not judicial. Deponents appear to maintain there was no policy, Judge Haynes Resp. 13, but this appears to be a disputed issue in the case. The Court will not resolve a contested factual issue in deponents' favor in order to limit plaintiffs' discovery into that precise question. That said, plaintiffs still may not inquire about any judicial acts or functions, such as the determination to give particular sentences to individuals or the judicial officers' mental impressions of cases.

Letters addressing the policy are likewise not judicial. No party appears to argue that the letters were an *ex parte* communication, which would be judicial, if not also improper. It is thus fair for plaintiffs to inquire if the letters were the result of some other, non-judicial, function performed by Haynes. While both this and the following area of questioning could implicate visits to the Judge, the 4th category in *Scott*, legal advice to the City, police officers, or others is outside the scope of the judicial function. Thus, while plaintiffs may not inquire about judicial communications, they may inquire about the letters from deponents regarding the City's policies.

The "other communications" plaintiffs wish to depose Haynes and Pritchard about may or may not be judicial. It is of course necessary for judicial officers to communicate with law enforcement for a variety of reasons. For example, judges may want to request additional staffing of law enforcement officers to ensure the safety of witnesses or parties to litigation. While perhaps ancillary to other judicial functions, such communications are still within the framework of judicial action. However, to the extent there are other communications between Haynes or Pritchard and the City wherein the deponents are acting in a legislative or executive role, judicial immunity would not protect deponents from discovery on such issues.

With respect to the final category of information plaintiffs seek, the authority granted to Pritchard, it is again an issue that may have judicial and non-judicial aspects to it. To the extent plaintiffs are interested in individual determinations Pritchard made, such determinations are almost certainly judicial. To the extent plaintiffs wish to inquire about the nature of her authority, such questions are not inherently judicial. For example, if a city employed a clerk that worked for the local court and also the local police department, they may exercise both executive and judicial authority at various points. The existence of judicial immunity would not shield their executive actions. That is not to say Pritchard had an executive function, rather that inquiring about the source of authority does not, by itself, implicate judicial functions or actions.

The Court wishes to emphasize two points. First, plaintiffs seem to argue that despite being judicial officers, these individuals took actions or have knowledge associated with other functions, such as executive or legislative functions. Performance of non-judicial functions, despite the potential of those functions being *de facto* rather than *de jure*, demarcates acceptable deposition questioning. That is, deponents are immune from discovery associated with judicial functions, but their having jobs in the local judiciary does not preclude their exercising other functions, either in

5

general or with regard to the policy alleged in this case.  Here, the Court makes no statement about the merits of plaintiffs' arguments—it only notes they are free to pursue discovery along those lines.  Second, plaintiffs claim their interest is not about what happened in the Courtroom, but rather the City's policy of converting a judgment for a fine into a jail sentence to be worked off at various rates.  While the geographic distance between the Court and the conversion may be minute, the difference is massive.  What happens in Court is one thing, a policy of converting a fine into a jail term without a judge being present is another entirely.  To the extent plaintiffs wish to address what happens in Court, such as the judge ordering people to the back room where they are to pay, when the judge appoints counsel, etc., such actions are judicial and thus protected.  A City-run debtors' prison is not.

To the extent plaintiffs wish to depose Haynes and Pritchard about non-judicial actions or functions, the Magistrate's orders granting protective orders, ECF Nos. 78 & 79, are REVERSED and plaintiffs' motion objecting to the orders, ECF No. 81, is GRANTED.  However, to the extent that plaintiffs' questions regard judicial functions, such as the mental impressions or decisions of Haynes or Pritchard as regards any individual case, the Magistrate's orders are AFFIRMED.  The motions for protective orders [69, 70] are thus GRANTED IN PART and DENIED IN PART.

II. Disputed Interrogatories for Absent Class Members

As a general rule "an absent class-action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  When it comes to interrogatories for absent class members, defendants must overcome the burden of showing that (1) the interrogatory is not designed as a tactic to take undue advantage of class members or as a stratagem to reduce the number of claimants, (2) that the interrogatory is necessary, (3) that it does not raise questions that would require the assistance of technical or legal advice, and (4) that it does not seek information

on matters already known to defendants.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986).

Here, the parties are unable to agree on five interrogatories to absent class member.  The parties agree on the other eight propounded by defendants.  None of the five disputed interrogatories proposed by defendants meet the burden articulated in *Cox*.

The first disputed interrogatory, #2, reads: "If you were booked into the jail as noted in question 1, above, why were you unable to pay? Please fully explain."

Defendant claims they wish to distinguish between those unable and those unwilling to pay.  However, that is simply not what the question asks.  Plaintiffs claim are tethered to individuals being jailed without any inquiry as to their ability to pay, without access to counsel, and without a warrant or probable cause.  It is in no way clear how this interrogatory is necessary to address class certification or defendants' claims.  Asking individuals to "fully explain" the cause of their inability to pay is also incredibly vague and could result in answers ranging from personal details regarding rent or car malfunctions to a history of systemic racism.  Further, given that the individuals' personal items were presumably inventoried at the time of their arrest—immediately after being ordered to pay the fine—defendants ought to have records of which defendants, if any, had the means to pay but elected not to do so.  This question is not necessary and seeks information that should be known to defendants.

The second disputed interrogatory, #3, reads: "Did the Municipal Judge or Court Personnel order you to pay all amounts due on the date you went to court, or did a Police Officer give you this order?"

As plaintiffs point out, this question is unintelligible. While the Court could apply legal canons of construction to divine the meaning of this question, the average reader is likely to be confused. For example, it could be read as asking if the judge or court personnel asked the individual to pay the amount due on the date the individual was at court (as opposed to in a bill later sent in the mail) or as requiring full payment on that very day. Similarly, plaintiffs note there is ambiguity with regards to the clause on the police officers. It could be asking the same question as before—however it may be interpreted—but for police officers rather than court personnel. It could also be understood as asking if an officer gave the individual a copy of the actual court order.

Additionally, defendants have access to this information and are in a better position to know if a policy such as that alleged by plaintiffs existed. While defendants are interested in determining if the Courts or the City are responsible for the policies in question, defendants have access to City employees as well as the records of judgments that were entered by the court. The Court does not see how this question is necessary and finds defendants already have access to this information.

The third disputed interrogatory, #6, reads: "Did you ask the Municipal Judge or a Court Clerk or Magistrate not to serve time in Jail? If so, what was said?"

Plaintiffs contend defendants violated their constitutional rights. Defendants' interrogatory asks absent class members if they begged. This question is insulting and irrelevant. As if that were insufficient, defendants have a log of who was jailed. To the extent defendants' argument is that some people talked their way out of it, the defendants' own records will indicate who did, or did not, manage to do so.

The forth disputed interrogatory, #7, is similar to #6, but addresses early release. The underlying problems with the question are likewise similar.

The final disputed interrogatory, #12, reads: "Please state whether you sought counseling or medical treatment for any sort of emotional distress related to being put in jail."

Defendants contend they wish to determine if questions of individual damages will overwhelm questions common to the class. This question is unnecessary because it does not do this. Whether individuals sought treatment bears no relation to their actual damages. That one sought treatment does not necessarily mean the consequences were severe and that one did not seek treatment does not mean damages were minimal.

In sum, these questions do not appear necessary, and in many cases defendants have better access to the information they are requesting than the absent class members are likely to possess. Moreover, the tenor of these questions can easily be read as demanding personal information defendants are likely to be uniquely uncomfortable giving as a stratagem for limiting class membership. Rightly or wrongly, asking an indigent defendant to "fully explain" why they are indigent and thus unable to pay is likely to discourage their remaining in the class. Defendants' motion [60] is DENIED.

III.     Deposition of Chief Robinson

Plaintiffs have indicated they wish to depose Chief Robinson. The Court authorizes their proceeding with this deposition. The Court also notes that defendants' prior request to stay discovery was previously denied [43].

IV.    Conclusion and Further Order

The Court is aware that the parties have elected to enter into mediation, currently scheduled to commence December 2, 2016. The parties shall provide an update to the Court every 30 days with respect to the status of mediation. Upon conclusion of mediation, regardless of the outcome, the parties shall notify the Court that mediation has been concluded and notify the Court if, in light of the outcome, it is necessary for the Court to address the pending motions to dismiss.

IT IS SO ORDERED this 1st day of December, 2016

                                                      ROYCE C. LAMBERTH
                                                     United States District Judge